UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------- x
DIANNE MILLER,                                  :
                                                :   Case No. 08-CV 03508(HB)
               Plaintiff,                     :
                                                :
          - against -                         :
                                                :
HOLTZBRINCK PUBLISHERS, LLC,                    :
MACMILLAN PUBLISHERS, INC., SAINT               :
MARTIN'S PRESS, HEATHER HUNTER                  :
AND MICHELLE VALENTINE,                         :
                                                :
               Defendants.                     :
------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF
## THE MACMILLAN DEFENDANTS' MOTION TO DISMISS

**DAVIS WRIGHT TREMAINE LLP**
**1633 Broadway**
**New York, New York 10019**
**(212) 489-8230**

*Attorneys for Defendants*
*Holtzbrinck Publishers, LLC,*
*Macmillan Publishers Inc.,*
*St. Martin's Press, LLC and*
*Michelle Valentine*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................. 1

THE ALLEGATIONS OF THE COMPLAINT ........................................................................... 2

    A.    Plaintiff's Alleged Injury ............................................................................... 2

    B.    The Claims Against the Macmillan Defendants .......................................... 3

ARGUMENT ................................................................................................................................. 3

    I.    PLAINTIFF'S CLAIMS FOR TORTIOUS INTERFERENCE AND CONVERSION ARE PREEMPTED BY THE COPYRIGHT ACT ..................... 3

        1.    The Tortious Interference Claim is Preempted (Count I) ........................... 5

        2.    The Conversion Claim is Preempted (Count II) .......................................... 6

    II.    THE FIRST AND SECOND CAUSES OF ACTION FAIL TO STATE COGNIZABLE CLAIMS FOR RELIEF ................................................................ 8

        1.    Tortious Interference ..................................................................................... 8

        2.    Conversion .................................................................................................. 10

    III.    LEAVE TO AMEND WOULD BE FUTILE AND SHOULD BE DENIED ...... 11

    IV.    PLAINTIFF HAS NOT SERVED DEFENDANT VALENTINE ....................... 13

CONCLUSION ........................................................................................................................... 14

# TABLE OF AUTHORITIES

## Cases

Page(s)

*American Movie Classics Co. v. Turner Entertainment Co.*,
  922 F. Supp. 926 (S.D.N.Y. 1996) ................................................................................ 5

*Archie Comic Publications, Inc. v. DeCarlo*, No. 00 Civ. 5686 (LAK)
  2001 WL 831250 (S.D.N.Y. July 23, 2001) .................................................................. 12

*BMG Music v. Pena*, No. 05 Civ. 2310 (RJD)(MDG), 2007 WL 2089367
  (E.D.N.Y. July 19, 2007) ............................................................................................... 12

*Briarpatch Ltd. v. Phoenix Pictures*, 373 F.3d 296 (2d Cir. 2004) .................................... 4

*Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 818 N.E.2d 1100 (2004) ..................................... 9

*Community for Creative Non-Violence v. Reid*, 846 F.2d 1485 (D.C. Cir. 1988),
  *aff'd without consideration on this point*, 490 U.S. 730 (1989) .................................. 12

*Computer Assoc. Int'l, Inc. v. Altai, Inc.* 982 F.2d 693 (2d Cir. 1992) .............................. 5

*Corbis Corp. v. UGO Networks, Inc.*, 322 F. Supp.2d 520 (S.D.N.Y. 2004) .................. 12

*Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905 (2d Cir. 1980) ............................. 13

*Financial Information, Inc. v. Moody's Investors Service, Inc.*, 808 F.2d 204
  (2d Cir. 1986) ................................................................................................................ 13

*Fine v. Dudley D. Doernberg & Co.*, 203 A.D.2d 419, 610 N.Y.S.2d 566
  (2d Dep't 1994) .............................................................................................................. 8

*Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195
  (2d Cir. 1983), *rev'd on other grounds,* 471 U.S. 539 (1985) ......................... 4, 5, 6, 10

*Jacobs v. Continuum Health Partners, Inc.*, 7 A.D.3d 312, 776 N.Y.S.2d 279
  (1st Dep't 2004) ............................................................................................................. 9

*Jasper v. Sony Music Entertainment, Inc.*, 378 F. Supp.2d 334 (S.D.N.Y. 2005) ........... 13

*Jones v. New York State Division of Military and Naval Affairs*, 166 F.3d 45
  (2d Cir. 1999) ................................................................................................................ 11

*Kamakazi Music Corp. v. Robbins Music Corp.*, 522 F. Supp. 125 (S.D.N.Y. 1981) ....... 5

## Cases (cont'd)

| | Page(s) |
|---|---|

*Kramer v. Pollock-Krasner Foundation*, 890 F. Supp. 250 (S.D.N.Y. 1995) .................................. 9

*Lindsay v. The Wrecked and Abandoned Vessel R.M.S. Titanic*,
   No. 97 Civ. 9248 (HB), 1999 WL 816163 (S.D.N.Y. Oct. 13, 1999) .............................. 13

*Marvullo v. Gruner & Jahr AG & Co.*, No. 98 Civ. 5000 (RLC),
   2001 WL 40772 (S.D.N.Y. Jan. 17, 2001) ........................................................................ 7

*Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368 (2d Cir. 2000) ................................ 8

*National Basketball Association v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997) .......................... 4

*PPX Enters., Inc. v. Audiofidelity Enters., Inc.* 818 F.2d 266 (2d Cir. 1987) ................................ 9

*Price v. Fox Entertainment Group, Inc.*, 473 F. Supp.2d 446 (S.D.N.Y. 2007) ........................ 5, 7

*RAO v. Verde*, 222 A.D.2d 569, 635 N.Y.S.2d 660 (2d Dep't 1995) .......................................... 11

*Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53 (2d Cir. 1993) .............................................. 10

*Seanto Exports v. United Arab Agencies*, 137 F. Supp.2d 445 (S.D.N.Y. 2001) ........................ 10

*Silverstein v. Penguin Putnam, Inc.*, 522 F. Supp.2d 579 (S.D.N.Y. 2007) .............................. 4, 5

*Stewart v. World Wrestling Federation Entertainment, Inc.*,
   No. 03 Civ. 2468 (RLC), 2005 WL 66890 (S.D.N.Y. Jan. 11, 2005) ............................... 7

*Thomson v. Larson*, 147 F.3d 195 (2d Cir. 1998) ...................................................................... 12

*Universal-MCA Music Publishing v. Bad Boy Entertainment, Inc.*,
   No. 02 Civ. 601935, 2003 WL 21497318 (N.Y. Sup. Ct., June 18, 2003) ...................... 10

*Well-Made Toy Manufacturing Corp. v. Goffa International Corp.*,
   354 F.3d 112 (2d Cir. 2003) ............................................................................................ 12

*Winner Intern. v. Kryptonite Corp.*, No. 95 Civ. 247 (KMW),
   1996 WL 84476 (S.D.N.Y., Feb. 27, 1996) ...................................................................... 9

## Statutes and Rules

| | Page(s) |
|---|---|

17 U.S.C. § 102(a)(1) .................................................................................................................... 4

**Statutes and Rules (cont'd)**

**Page(s)**

17 U.S.C. § 201(a) ........................................................................................................... 12

17 U.S.C. § 301 ............................................................................................................ 3, 4

17 U.S.C. § 411(a) ........................................................................................................... 12

Fed. R. Civ. P. 12(b)(5) ................................................................................................ 1, 13

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 1, 2

Nimmer on Copyright, § 1.01[B][1][i] ............................................................................... 7

Nimmer on Copyright, § 1.01[B][2] ................................................................................. 13

Defendants Holtzbrinck Publishers, LLC, Macmillan Publishers Inc., St. Martin's Press, LLC, and Michelle Valentine (collectively, "the Macmillan defendants") respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the two counts in the Complaint asserted against the Macmillan defendants for failure to state claims upon which relief may be granted. Defendant Valentine also moves, pursuant to Fed. R. Civ. P. 12(b)(5), to dismiss by reason of plaintiff's failure to serve the Summons and Complaint on Valentine.

### PRELIMINARY STATEMENT

Simply put, the two state law claims that plaintiff Dianne Miller ("Miller") asserts against the Macmillan defendants in this action are squarely preempted by the federal Copyright Act.

In her Complaint, Miller alleges that she co-authored a book manuscript in conjunction with defendant Heather Hunter ("Hunter"), and that the Macmillan defendants thereafter published a book – co-authored by Hunter and defendant Valentine – that "is substantially the same work" as plaintiff's manuscript. Miller's allegations thus fall squarely and exclusively under the Copyright Act. Yet, nowhere in her Complaint does Miller allege a copyright infringement claim or even that she registered the manuscript for copyright protection. Instead, she asserts two state law claims against the Macmillan defendants – Count I for tortious interference with business relations and Count II for conversion of the manuscript.

As a matter of settled Second Circuit law, plaintiff's tortious interference and conversion claims are preempted by the Copyright Act and, accordingly, must be dismissed. (POINT I, *infra*). In addition, as an independent ground for dismissal, the Complaint does not (and cannot) plead the elements required to state a claim for either tortious interference or conversion. (POINT II, *infra*). Last, because plaintiff has not secured a copyright registration on the

manuscript, which is a jurisdictional prerequisite to a copyright infringement claim, any request by plaintiff to amend the Complaint would be futile and should be denied. (POINT III, i*nfra*).[1]

### THE ALLEGATIONS OF THE COMPLAINT

The Macmillan defendants vigorously dispute many of the factual allegations of the Complaint. Nonetheless, even assuming the truth of those allegations for purposes of this motion only (as is required on a Rule 12(b)(6) motion to dismiss), the Complaint fails to state a claim against the Macmillan defendants as a matter of law.[2]

A. **Plaintiff's Alleged Injury**

In her Complaint, plaintiff names as defendants St. Martin's Press, LLC and its affiliates, Holtzbrinck Publishers, LLC and Macmillan Publishers Inc., as the publishers of the book in suit. Compl. ¶¶ 3-5, 12. Also named as defendants in the Complaint are Heather Hunter and Michelle Valentine, who co-authored the book in suit. *Id.* at ¶¶ 6-7, 12.

The Complaint avers that plaintiff Miller agreed to write a book "in conjunction" with defendant Hunter. Compl. ¶10. The Complaint further alleges that, in April 2005, Miller "delivered a finished manuscript to Defendant Hunter and her agent" (the "Manuscript"). *Id.* at ¶ 11. There is no allegation in the Complaint that Miller has ever sought or secured a copyright registration on the Manuscript she allegedly co-authored with Hunter. Nor does the Complaint allege that Miller ever demanded that the Manuscript be returned to her, or that she delivered her only copy of the Manuscript to Hunter.

Miller claims that, on or about July 24, 2007, the Macmillan defendants published a book (the "Book") "purportedly written by Defendant Hunter and Defendant Valentine," that was

---

[1] Plaintiff has also failed to serve the Summons and Complaint on defendant Valentine, which serves as an additional ground for dismissal of the Complaint against her. (POINT IV, *infra*)

[2] A copy of the Complaint is annexed as Exhibit A to the accompanying Affidavit of Robert D. Balin, sworn to June 2, 2008.

"**substantially the same work and product that Plaintiff wrote for Hunter.**"  Compl. ¶¶ 12, 13 (emphasis added).  The Complaint alleges that defendant Valentine intentionally took the Manuscript written by plaintiff, and did not pay or acknowledge Miller for the work.  *Id.* at ¶ 15.  Last, the Complaint avers that the Macmillan defendants knew that the Book was not an original work and published it without regard for Miller's rights.  *Id.* at ¶ 16.

**B.     The Claims Against the Macmillan Defendants**

On the basis of these sparse allegations, the Complaint asserts two causes of action against the Macmillan defendants.  Count I asserts a state law claim for "intentional and tortious interference with business relationship" against all defendants.  Compl. ¶¶ 17-21.  Count II asserts a state law claim for "conversion" of plaintiff's Manuscript by the Macmillan defendants.  *Id.* at ¶¶ 22-24.[3]

**ARGUMENT**

**I.**

**PLAINTIFF'S CLAIMS FOR TORTIOUS INTERFERENCE AND CONVERSION ARE PREEMPTED BY THE COPYRIGHT ACT**

As a threshold matter, plaintiff's state law claims against the Macmillan defendants – for tortious interference and conversion – must be dismissed because they are preempted by the Copyright Act.[4]

In Section 301 of the Copyright Act (17 U.S.C. § 301), Congress expressly provided for broad preemption of state law claims by federal copyright law.  Thus, "[t]he Copyright Act preempts a state law claim when:  (1) the particular work to which the claim is being applied

---

[3]     Count III of the Complaint asserts a claim for fraudulent inducement and misrepresentation against defendant Hunter only.

[4]     As discussed in greater length in Point III, *infra*, plaintiff's claims are preempted notwithstanding the fact that plaintiff is barred, as a jurisdictional matter, from asserting a claim for copyright infringement due to her failure to register for a copyright in the Manuscript.

falls within the types of works protected by the Copyright Act and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the exclusive rights already protected by copyright law." *Silverstein v. Penguin Putnam, Inc.*, 522 F. Supp.2d 579, 608 (S.D.N.Y. 2007) (dismissing state law claims due to preemption) (citing *Briarpatch Ltd. v. Phoenix Pictures*, 373 F.3d 296, 305 (2d Cir. 2004)); *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 848 (2d Cir. 1997).

The first prong of this preemption test – known as the "subject matter" requirement – is satisfied "if the claim applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works." *Briarpatch*, 373 F.3d at 305. Here, plaintiff Miller claims that defendants made improper use of a book manuscript that she authored with Hunter. A book manuscript is a classic example of a "literary work" that falls within the protective ambit of the Copyright Act. *See* 17 U.S.C. § 102(a)(1) ("[w]orks of authorship" include "literary works"); *Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195, 200 (2d Cir. 1983) (President Ford's unpublished book manuscript constituted work of authorship protected by Copyright Act and, hence, state law claims arising from unauthorized use were preempted), *rev'd on other grounds,* 471 U.S. 539 (1985). Since Miller complains that defendants violated rights associated with her creation of a book manuscript, the "subject matter" requirement is clearly met for preemption of her state law claims against the Macmillan defendants.[5]

The second prong of the preemption test – the "general scope" requirement – is satisfied when the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law, and the state-law claim does not include

---

[5] Miller describes her work as an "unpublished manuscript". Compl. ¶ 23. Section 301 preemption expressly applies to claims arising from unpublished as well as published works. *See* 17 U.S.C. § 301 (claims based on works of authorship, "whether published or unpublished, are governed exclusively by this title").

additional elements that make it qualitatively different from a claim for copyright infringement. *See Briarpatch*, 373 F.3d at 305. Moreover, "[c]ourts in the Second Circuit take a 'restrictive view' of what extra elements make a state law claim qualitatively different [from a copyright claim], looking at 'what [the] plaintiff seeks to protect[.]'" *Silverstein*, 522 F.Supp.2d at 608 (quoting, in part, *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992)); *Price v. Fox Entertainment Group, Inc.*, 473 F. Supp.2d 446, 457 (S.D.N.Y. 2007) ("[t]he court takes a 'restrictive view' of what qualifies as an extra element sufficient to shield the claim from copyright preemption")

As discussed below, Miller's state law claims against the Macmillan defendants are not qualitatively different from the elements of a copyright infringement claim and, hence, are preempted.

### 1. The Tortious Interference Claim is Preempted (Count I)

"In the Second Circuit, it is well settled that claims for tortious interference based on the unauthorized publication of a work protected by the Copyright Act are preempted." *American Movie Classics Co. v. Turner Entertainment Co.*, 922 F. Supp. 926, 932 (S.D.N.Y. 1996) (granting motion to dismiss); *see also Harper & Row Publishers,* 723 F.2d at 201 (affirming dismissal of tortious interference claim as preempted, holding that "[i]f there is a qualitative difference between [a tortious interference claim] and the exclusive right under the [Copyright] Act … we are unable to discern it. In both cases, it is the act of unauthorized publication which causes the violation"); *Kamakazi Music Corp. v. Robbins Music Corp.*, 522 F. Supp. 125 (S.D.N.Y. 1981) (dismissing tortious interference claim as preempted by the Copyright Act).

Here, Miller alleges that, by publishing a book that "is substantially the same work and product that Plaintiff wrote" (Compl. ¶ 13), defendants tortiously interfered with Miller's

"business relations with those inside of the literary community by failing to give Plaintiff notoriety for the manuscript written." Compl. ¶ 21. Miller is thus claiming that the alleged act of unauthorized publication caused her harm. Yet unauthorized publication is the very essence of an infringement claim under the Copyright Act. If this claim were not preempted, virtually every claim for copyright infringement could be coupled with one for interference with business relations or reputation inside the literary community for failure to give a plaintiff credit for the allegedly infringed work. Plaintiff's tortious interference claim plainly seeks recovery for the same alleged conduct as a copyright infringement claim, and is therefore preempted.

Moreover, the fact that Miller alleges that the Macmillan defendants acted in an "intentional" manner (Compl. ¶ 18) does not save her tortious interference claim from dismissal. As the Second Circuit and lower courts have repeatedly held in dismissing tortious interference claims on copyright preemption grounds:

> the fact that [plaintiff] pleaded additional elements of awareness and intentional interference, … goes merely to the scope of the right; it does not establish qualitatively different conduct on the part of the infringing party, nor a fundamental nonequivalence between the state and federal rights implicated.

*Harper & Row Publishers* 723 F.2d at 201. *See also American Movie Classics Co*, 922 F. Supp. at 932. ("[t]he allegations … that Turner Classic acted wrongfully and intentionally with knowledge … make no difference to the preemption analysis").

In short, plaintiff's tortious interference claim is clearly preempted.

### 2. The Conversion Claim is Preempted (Count II)

Courts have likewise consistently found that the elements of a claim for conversion of a work of authorship are not qualitatively different from the elements of a claim for copyright infringement and, hence, that conversion claims are also preempted. *See*, *e.g.*, *Harper & Row Publishers*, 723 F.2d at 201 (concluding that conversion claim was necessarily preempted where

unauthorized publication of manuscript was the gravamen of plaintiffs' claim, and holding "it is clear that the right [plaintiffs] seek to protect is coextensive with an exclusive right already safeguarded by the [Copyright] Act – namely, control over reproduction and derivative use of copyrighted material"); *Price v. Fox Entertainment Group, Inc.*, 473 F. Supp.2d 446, 460-61 (S.D.N.Y. 2007) (dismissing claim for conversion of screenplay and finding that conversion lacks an extra element that would make it qualitatively different from a claim of co-authorship under the Copyright Act); *Marvullo v. Gruner & Jahr AG & Co.*, No. 98 Civ. 5000 (RLC), 2001 WL 40772 at *6 (S.D.N.Y. Jan. 17, 2001) (granting motion to dismiss conversion claim on preemption grounds where plaintiff gave defendant photographs, but photographs were used beyond terms agreed upon by the parties); *Stewart v. World Wrestling Federation Entertainment, Inc.*, No. 03 Civ. 2468 (RLC), 2005 WL 66890 at *5 (S.D.N.Y. Jan. 11, 2005) (granting motion to dismiss conversion claim as preempted by Copyright Act). "The mere act of reproduction does not constitute conversion precisely because reproduction constitutes an interference with the intangible artistic property right, not with the tangible property right in the chattel that is being reproduced." Nimmer on Copyright, § 1.01[B][1][i] (2007).

In the present action, the terse Complaint alleges only that the "intentional acts complained [sic] constitute unlawful conversion of an unpublished manuscript by Defendants Holtzbrinck, Macmillan, St., Martin's, and Valentine." Compl. ¶ 23. The sole allegation against Valentine is that she "took the manuscript written by Plaintiff, and held it out as her own work and has failed to acknowledge that the work is that of the Plaintiff or pay Plaintiff for same." Compl. ¶ 15. The sole allegation against Holtzbrinck, Macmillan and St. Martin's is that they "knew that the book purportedly written by Defendant Hunter and Valentine was not an original work and published the book without regard for the rights of the Plaintiff." Compl. ¶ 16. Thus,

the *gravamen* of plaintiff's claim is that the Macmillan defendants unlawfully took and used the <u>expression</u> contained in the Manuscript (*not* that defendants unlawfully obtained or retained possession of the tangible pieces of paper on which the words appear).  This is the very definition of an infringement claim under the Copyright Act.

Because Miller alleges the unauthorized reproduction of expression from her Manuscript, and because the right that Miller seeks to enforce is co-extensive with an exclusive right already safeguarded by the Copyright Act, her conversion claim is preempted.

## II.

### THE FIRST AND SECOND CAUSES OF ACTION FAIL TO STATE COGNIZABLE CLAIMS FOR RELIEF

Miller's state law claims should be dismissed for the additional and independent reason that they fail to state a claim upon which relief may be granted.

### 1.    Tortious Interference

A claim for interference with business relations is very difficult to sustain and must meet heightened pleading requirements more demanding than those for interference with the performance of an existing contract.  *See Fine v. Dudley D. Doernberg & Co.*, 203 A.D.2d 419, 610 N.Y.S.2d 566, 567 (2d Dep't 1994).  "Under New York law, the elements of a claim for tortious interference with prospective business relations are: (1) business relations with a third party; (2) the defendant's interference with those business relations; (3) the defendant acted with the sole purpose of harming the plaintiff or used criminal or tortious means; and (4) injury to the business relationship."  *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 382 (2d Cir. 2000).

At a minimum, "a claim for interference with advantageous business relationships must specify some particular, existing business relationship through which plaintiff would have done

business but for the allegedly tortious behavior." *Kramer v. Pollock-Krasner Foundation*, 890 F. Supp. 250, 258 (S.D.N.Y. 1995) (Baer, J.) (granting motion to dismiss where complaint referred only generally to potential contracts) (citing *PPX Enters., Inc. v. Audiofidelity Enters., Inc.*, 818 F.2d 266, 269 (2d Cir. 1987)); *see also Winner Intern. v. Kryptonite Corp.*, No. 95 Civ. 247 (KMW), 1996 WL 84476 at *4 (S.D.N.Y., Feb. 27, 1996) (granting motion to dismiss claim for tortious interference with prospective economic advantage where plaintiff failed to allege that defendant's conduct interfered with its business relationship with any specific third party).

Here, Miller has not specified <u>any</u> particular, existing relationship through which she would have done business but for the allegedly tortious behavior of the Macmillan defendants. To the contrary, she simply alleges that the alleged interference damaged Miller's business relationships "with those inside of the literary community by failing to give Plaintiff notoriety for the manuscript written." Compl. ¶ 21. It is hard to imagine an allegation less particular or specific. Such a vague allegation wholly fails to meet the strict requirement of pleading an identified existing business relationship that was harmed.

In addition, Miller has not satisfied the third element. "To state a cause of action for tortious interference with prospective business advantage, it must be alleged that the conduct by defendant that allegedly interfered with plaintiff's prospects either was undertaken for the <u>sole</u> purpose of harming plaintiff, or that such conduct was wrongful or improper independent of the interference allegedly caused thereby." *Jacobs v. Continuum Health Partners, Inc.*, 7 A.D.3d 312, 313, 776 N.Y.S.2d 279, 280 (1st Dep't 2004) (emphasis added). "Conduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other nonbinding economic relations." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190, 818 N.E.2d 1100, 1103 (2004). Here, defendants

Macmillan, Holtzbrinck and St. Martin's, as book publishers, and defendant Valentine, as an author, obviously had an economic interest in publishing the Book in suit. Thus, Miller does not and cannot plead that the Macmillan defendants acted for the sole purpose of harming plaintiff. Nor has Miller alleged independent tortious conduct sufficient to create liability for interference. As described below, Miller has failed to allege an actionable claim for the tort of conversion, and does not allege any other independent torts or crimes. For all these reasons, Miller's claim of tortious interference with business relationship should be dismissed.

### 2. Conversion

To maintain a claim for conversion under New York law, plaintiff must show legal ownership of a specific identifiable piece of property and defendant's exercise of dominion and control to the complete exclusion of the rightful possessor. *Harper & Row Publishers*, 723 F.2d at 201; *Universal-MCA Music Publishing v. Bad Boy Entertainment, Inc.*, No. 02 Civ. 601935, 2003 WL 21497318 at *6-7 (N.Y. Sup. Ct., June 18, 2003) (granting motion to dismiss conversion claim). Where the original possession is lawful, "conversion does not occur until the defendant refuses to return property after demand or until he sooner disposes of the property." *Schwartz v. Capital Liquidators, Inc.,* 984 F.2d 53, 54 (2d Cir. 1993) (affirming dismissal of conversion claim where plaintiff did not demand return of property); *Seanto Exports v. United Arab Agencies*, 137 F. Supp. 2d 445, 451 (S.D.N.Y. 2001) (dismissing conversion claim where defendant did not have possession of property).

Plaintiff's conversion claim fails as a matter of law for numerous reasons. Miller admits on the face of the Complaint that she voluntarily delivered a copy of the Manuscript to defendant Hunter and her agent. *See* Compl. ¶ 11. And she has not alleged that Hunter gave the Macmillan defendants the specific, identifiable, tangible Manuscript that Miller sent, rather than a copy of the Manuscript. She has not alleged that the Macmillan defendants have possession of the

specific, identifiable, tangible manuscript that Miller sent to Hunter. She does not - - and cannot consistent with Rule 11 - - allege that the Macmillan defendants exercised dominion over the Manuscript to the complete exclusion of Miller, or even that the Macmillan defendants had the only copy of the Manuscript. She does not allege that she ever requested the return of the manuscript from Hunter or from any other defendant. She does not allege that she was harmed by a lack of access to the copy of the Manuscript she delivered to Hunter. Last, Miller alleges that she was harmed by the alleged conversion of the expression contained in the Manuscript as opposed to the tangible copy of the Manuscript itself. New York law does not recognize a claim for conversion of intangible property. *See RAO v. Verde,* 222 A.D.2d 569, 570, 635 N.Y.S.2d 660, 661 (2d Dept. 1995) (affirming dismissal of conversion claim because defendants' use of information learned in a document was a claim for conversion of intangible property).

For all these independent reasons, plaintiff's conversion count fails to state an actionable claim and should be dismissed.

### III.

### LEAVE TO AMEND WOULD BE FUTILE AND SHOULD BE DENIED

Miller should not be granted leave to replead her claims against the Macmillan defendants, as doing so would be futile.

Leave to amend a pleading should be denied where amendment would be futile. *See Jones v. New York State Division of Military and Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999). Here, as discussed above, Miller's rights and remedies, if any, are governed exclusively by the Copyright Act. Miller is, however, barred from bringing a copyright infringement claim because she has not registered the Manuscript that she wrote with defendant Hunter for copyright protection. It is well settled that "[r]egistration of a copyright is a jurisdictional prerequisite to bringing a copyright infringement suit in federal court." *BMG Music v. Pena*, No. 05 Civ. 2310

(RJD)(MDG), 2007 WL 2089367 at *2 (E.D.N.Y. July 19, 2007).  *See also Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 354 F.3d 112, 115 (2d Cir. 2003) (noting that "[copyright] registration requirement is jurisdictional"); 17 U.S.C. § 411(a).  And, as a matter of policy, courts will <u>not</u> stay dismissal of claims pending a plaintiff's application for certificates of copyright registration. *See Corbis Corp. v. UGO Networks, Inc.*, 322 F.Supp.2d 520, 522  (S.D.N.Y. 2004) (dismissing action for lack of jurisdiction where applications for copyright registration were pending); *Archie Comic Publications, Inc. v. DeCarlo*, No. 00 Civ. 5686 (LAK), 2001 WL 831250 at *1 (S.D.N.Y. July 23, 2001) (refusing to stay action because it would be unjust to defendants to delay resolution of the suit).

     Moreover, even if Miller could somehow bypass the jurisdictional hurdle of registration, which she cannot, her very allegations demonstrate that she has no actionable copyright infringement claim against the Macmillan defendants.  By her own admission, Miller created the Manuscript "in conjunction" with defendant Hunter.  (Compl. ¶ 20)  Under the Copyright Act, as alleged joint authors of the work, Miller and Hunter <u>each</u> have an undivided interest in the work, and <u>each</u> has the right to license the work independent of the other to third parties, such as to the Macmillan defendants.  *See* 17 U.S.C. § 201(a); *Thomson v. Larson*, 147 F.3d 195, 199 (2d Cir. 1998) ("[E]ach joint author has the right to use or to license the work as he or she wishes …"); *Community for Creative Non-Violence v. Reid*, 846 F.2d 1485, 1498 (D.C. Cir. 1988) ("Joint authors co-owning copyright in a work are deemed to be tenants in common, with each having an independent right to use or license the copyright …")(citations omitted), *aff'd without consideration on this point*, 490 U.S. 730 (1989).  While one joint author has a duty to account to the other for profits received, this duty runs *only* between the joint authors; licensees such as the Macmillan defendants "have no obligation to co-authors with whom they do not contract."

*Jasper v. Sony Music Entertainment, Inc.*, 378 F. Supp.2d 334, 346 (S.D.N.Y. 2005); *see also Lindsay v. The Wrecked and Abandoned Vessel R.M.S. Titanic*, No. 97 Civ. 9248 (HB), 1999 WL 816163 at * 6 (S.D.N.Y. Oct. 13, 1999) (claim for accounting against licensee of joint-owner of copyright fails as a matter of law).  In short, even accepting plaintiff's allegations as true, whatever rights she may claim against her alleged joint author, Hunter, for an accounting under the Copyright Act, the law is clear that she has <u>no</u> cognizable accounting or infringement claim against the Macmillan defendants.

Finally, the fact that Miller cannot succeed on a copyright claim against the Macmillan defendants (and, indeed, is jurisdictionally barred from bringing a copyright infringement suit) does not alter the preemption analysis under the Copyright Act.  "It is clear that failure to meet the required standards for federal [copyright] protection will not negate federal pre-emption.  Otherwise, noncompliance with the conditions to limited federal protection could lead to a more unlimited form of state protection.  Such a result would roundly contravene … the pre-emption structure."  Nimmer on Copyright, § 1.01[B][2] at 1-65; *see also Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 918 (2d Cir. 1980) (holding that plaintiff cannot achieve by a state law claim what it failed to achieve under its copyright claim); *Financial Information, Inc. v. Moody's Investors Service, Inc.*, 808 F.2d 204, 209 (2d Cir. 1986) (even though financial reporting service did not merit copyright protection, state law misappropriation claim still preempted).

### IV.

### PLAINTIFF HAS NOT SERVED DEFENDANT VALENTINE

Miller has not served Defendant Valentine with the Summons and Complaint (Valentine Decl., ¶ 2), which serves as an additional ground for dismissal of the Complaint against her under Fed. R. Civ. P. 12(b)(5).  Because Miller fails to state a claim against Valentine on the face

of the Complaint, and because the Complaint cannot be remedied, service on Valentine at this point would be futile.

## CONCLUSION

Miller has asserted a single alleged wrong: reproduction of material from the Manuscript in defendants' Book. As a result, Miller's state law claims against the Macmillan defendants are preempted by the Copyright Act and must be dismissed. In addition, even if the factual allegations of the Complaint are taken as true, both causes of action against the Macmillan defendants fail to state a claim for relief. The Macmillan defendants' dismissal motion should therefore be granted.

Dated: New York, New York
        June 2, 2008

        Respectfully submitted,

        DAVIS WRIGHT TREMAINE LLP

        By: /s/ Robert. D. Balin
            Robert D. Balin (RDB 5847)
            Deborah A. Adler (DA 0909)

        1633 Broadway
        New York, New York 10019
        Telephone: (212) 489-8230
        Fax: (212) 489-8340

        *Attorneys for Defendants Holtzbrinck Publishers, LLC, Macmillan Publishers Inc., St. Martin's Press, LLC and Michelle Valentine*