UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------- x

DIANNE MILLER,

    Plaintiff,

- against -

HOLTZBRINCK PUBLISHERS, LLC,
MACMILLAN PUBLISHERS, INC.,
SAINT MARTIN'S PRESS, HEATHER
HUNTER AND MICHELLE VALENTINE,

    Defendants.

------------------------------------------------------------- x

Civ. Action No. 08-CV-03508 (HB)

*Electronically Filed*

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MACMILLAN DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................. i

ARGUMENT ........................................................................................................................1

    I.    PLAINTIFF'S CLAIMS FOR TORTIOUS INTERFERENCE AND CONVERSION ARE PREEMPTED BY THE COPYRIGHT ACT ..................................................................................2

        A.    The Tortious Interference Claim is Preempted ................................2

        B.    The Conversion Claim is Preempted ................................................5

    II.    THE FIRST AND SECOND CAUSES OF ACTION FAIL TO STATE CLAIMS FOR RELIEF ............................................................6

        A.    Tortious Interference ..........................................................................7

        B.    Conversion .........................................................................................8

    III.    PLAINTIFF HAS NOT SERVED DEFENDANT VALENTINE ................10

CONCLUSION ..................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*American Movie Classics v. Turner Entertainment Co.*,
    922 F. Supp. 926 (S.D.N.Y. 1996) ..................................................................................2

*Atrium Group de Ediciones Y Publicaciones, S.L. v. Harry N. Abrams, Inc.*,
    2008 WL 2743517 (S.D.N.Y. 2008)................................................................................3

*Computer Assocs. Intern., Inc. v. Altai, Inc.*,
    982 F.2d 693 (2d Cir. 1992)............................................................................................3

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
    723 F.2d 195 (2d Cir. 1983)........................................................................................3, 9

*Jasper v. Sony Music Entertainment, Inc.*,
    378 F. Supp.2d 334 (S.D.N.Y. 2005)..............................................................................8

*Kamikaze Music Corp. v. Robbins Music*,
    522 F. Supp. 125 (S.D.N.Y. 1981) .................................................................................3

*Nadel v. Play-By-Play Toys & Novelties, Inc.*,
    208 F.3d 368 (2d Cir. 2000)............................................................................................7

*National Basketball Ass'n v. Motorola, Inc.*,
    105 F.3d 841 (2d Cir. 1997)............................................................................................4

*NBT Bancorp, Inc. v. Fleet/Norstar Financial Group, Inc.*,
    159 A.D.2d 902 (3d Dept. 1990) ....................................................................................8

*Price v. Fox Entertainment Group, Inc.*,
    473 F. Supp.2d 446 (S.D.N.Y. 2007)..............................................................................3

*Silverstein v. Penguin Putnam, Inc.*,
    522 F. Supp.2d 579 (S.D.N.Y. 2007)..............................................................................3

*Thomson v. Larson*,
    147 F.3d 195 (2d Cir. 1998)............................................................................................8

*Trustforte Corp. v. Eisen*,
    10 Misc.3d 1064(A) (NY Nov. 15, 2005).......................................................................9

Defendants Holtzbrinck Publishers, LLC, Macmillan Publishers Inc., St. Martin's Press, LLC, and Michelle Valentine (collectively, the "Macmillan defendants") respectfully submit this reply memorandum of law in further support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the two counts in the Complaint asserted against the Macmillan defendants for failure to state claims upon which relief may be granted. This reply brief is also submitted in further support of defendant Michelle Valentine's unopposed motion, pursuant to Fed. R. Civ. P. 12(b)(5), to dismiss by reason of plaintiff's failure to serve the Summons and Complaint on Valentine.

Plaintiff's answering brief ("Opp. Br.") attempts without success to escape the inevitable conclusion that plaintiff is asserting a single alleged wrong by the Macmillan defendants: publication of material from the Manuscript in defendants' Book. As a result, under settled law, plaintiff's two state law claims against the Macmillan defendants – for tortious interference and conversion – are clearly preempted by the Copyright Act and should be dismissed with prejudice. No possible amendment can change the conclusion that plaintiff's claims are preempted as a matter of law. (POINT I, *infra*)

While this Court need go no further in dismissing the two claims pled against the Macmillan defendants, plaintiff also all but admits that the Complaint fails to state a claim for either tortious interference or conversion and requests leave to amend. Plaintiff's request to amend is futile. Even if plaintiff's claims were not preempted by the Copyright Act – which they are – she cannot plead the elements required to state a claim for either tortious interference or conversion. (POINT II, *infra*).

# ARGUMENT

## I.

## PLAINTIFF'S CLAIMS FOR TORTIOUS INTERFERENCE AND CONVERSION ARE PREEMPTED BY THE COPYRIGHT ACT

In her answering brief, plaintiff concedes – as she must – that the gravamen of her tortious interference and conversion claims is that the Macmillan defendants allegedly "published the book without regard for the rights of the Plaintiff." Opp. Br. at 4 (quoting Complaint ¶ 16). And it is black letter law that such state law claims "based on unauthorized publication of a work protected by the Copyright Act are preempted." *American Movie Classics v. Turner Entertainment Co.*, 922 F. Supp. 926, 932 (S.D.N.Y. 1996). Plaintiff nonetheless seeks to avoid preemption by arguing that her state law claims plead "extra elements" not present in a copyright infringement claim. Opp. Br. at 5. This meritless argument ignores settled preemption principles and plaintiff's own pleadings. Regardless of how she attempts to stretch and recast her allegations, plaintiff cannot change the clear result that her claims are preempted as a matter of law.

### A.    The Tortious Interference Claim is Preempted

Miller asserts that her state law claim for tortious interference with business relations is not preempted because it pleads as extra elements: (1) defendants' "intentional interference" and (2) defendants' "use of improper means to interfere with the relationship between Hunter and Miller" that are not present in a copyright infringement action.[1] Opp. Br. at 4-5. Yet Miller's

---

[1] In her opposition brief Miller states that, while it "has not yet been determined which state law will apply in this matter," she expects to present evidence that "Hunter's relationship with the Macmillan defendants arose in New York." Opp. Br. at 4 n.1. As a result, New York law supplies the elements of plaintiff's tort claims against the Macmillan defendants. Moreover, no choice of law determination need be made since – as plaintiff's brief indicates – the elements of plaintiff's tortious interference and conversion claims are virtually identical under the law of Georgia and New York. *See* Opp. Br. at 4-5.

opposition brief fails to cite even a single case in which a tortious interference claim has survived preemption.[2] And with good reason: Courts have consistently held just the opposite – that tortious interference claims are squarely preempted by the Copyright Act. *See, e.g., Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195, 200 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985); *American Movie Classics Co.*, 922 F. Supp. at 932 ("In the Second Circuit, it is well settled that claims for tortious interference based on the unauthorized publication of a work protected by the Copyright Act are preempted"); *Kamikaze Music Corp. v. Robbins Music*, 522 F. Supp. 125, 137 (S.D.N.Y. 1981) *aff'd*, 684 F.2d 228 (2d Cir. 1982).

In this regard, courts have repeatedly held that for a state law claim to avoid preemption, it must plead, not merely extra elements, but elements which "change[] the nature of the claim so that it is '*qualitatively* different from a copyright infringement claim.'" *Atrium Group de Ediciones Y Publicaciones, S.L. v. Harry N. Abrams, Inc.*, 2008 WL 2743517 at * 4 (S.D.N.Y. July 11, 2008), *quoting Computer Assocs. Intern., Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992) (emphasis in the original). And "[c]ourts in the Second Circuit take a 'restrictive view' of what extra elements make a state law claim qualitatively different [from a copyright claim]" and focus, instead, on "what [the] plaintiff seeks to protect." *Silverstein v. Penguin Putnam, Inc.*, 522 F. Supp.2d 579, 608 (S.D.N.Y. 2007) (quoting, in part, *Computer Assoc. Int'l, Inc.*, 982 F.2d at 716); *see also Price v. Fox Entertainment Group, Inc.*, 473 F. Supp.2d 446, 457 (S.D.N.Y. 2007) (same).

Applying this rule, courts in the Second Circuit have consistently held that labeling the defendant's conduct as "intentional" or "improper" – as plaintiff does here – will not save a tortious interference claim from preemption. For example, in *Harper & Row*, the Second Circuit

---

[2] Instead, Miller cites a Second Circuit case involving a breach of fiduciary duty claim and a Seventh Circuit case involving a state law contract claim. *See* Opp. Br. at 5.

squarely held that pleading the "additional elements of awareness and intentional interference" does not shield an interference claim from preemption because the existence of those elements "goes merely to the scope of the right; it does not establish qualitatively different conduct on the part of the infringing party, nor a fundamental nonequivalence between the state and federal rights implicated." *Harper & Row Publishers*, 723 F.2d at 201; *see also National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 851(2d Cir. 1997) ("An action will not be saved from preemption by elements such as awareness or intent, which alter the action's scope but not its nature"); *American Movie Classics Co.*, 922 F. Supp. at 932 ("[t]he allegations ... that Turner Classic acted wrongfully and intentionally with knowledge ... makes no difference to the preemption analysis"), *Atrium*, 2008 WL 2743517 at * 4 (allegation of "'deception' is not the sort of element that would cause claims . . . to be 'qualitatively different' from the Federal Copyright Act").

In her answering brief, Miller leaves no doubt that the *gravamen* of her tortious interference claim is that the defendants interfered with her business relations by allegedly publishing her work without her consent:  She complains that the Macmillan defendants "published the book without regard for the rights of the Plaintiff." *See* Opp. Br. at 3-4; *id.* at 6 (Macmillan defendants "intentionally published the work"). The unauthorized publication of which plaintiff complains is the very essence a copyright infringement claim.  Miller thus alleges conduct that is qualitatively *identical* to an infringement claim under the Copyright Act. *Harper & Row*, 723 F.2d at 201 (affirming preemption of tortious interference claim; "[i]f there is a qualitative difference between [a tortious interference claim] and the exclusive right under the [Copyright] Act ... we are unable to discern it.  In both cases, it is the act of unauthorized publication which causes the violation"); *Kamikaze Music Corp.*, 522 F.Supp. at 137 (dismissing

tortious interference claim arising from alleged unauthorized publication since "it does not afford plaintiffs rights 'different in kind' from those protected by the copyright laws, and thus . . . is preempted under the Copyright Act.'"

Because the rights plaintiff seeks to protect are fundamentally equivalent to those protected by copyright law, Miller's tortious interference claim is preempted and should be dismissed.

**B.    The Conversion Claim is Preempted**

In her answering brief, Miller argues that her conversion claim is not preempted because the tort of conversion requires a showing that defendants exercised ownership over the Manuscript while knowing of Miller's rights, which is not required for a showing of copyright infringement. Opp. Br. at 5-6. As with Miller's tortious interference claim, her conversion claim is preempted, regardless of these "extra elements", since her allegations of conversion are qualitatively identical to allegations of copyright infringement.

It is elemental that a conversion claim is preempted where the right that plaintiff seeks to protect is control over reproduction and derivative use of the work at issue. *See Harper & Row*, 723 F.3d at 201 ("If unauthorized publication is the *gravamen* of [plaintiffs'conversion] claim, then it is clear that the right they seek to protect is coextensive with an exclusive right already safeguarded by the Act – namely, control over reproduction and derivative use of copyrighted material"); *Price*, 473 F.Supp.2d at 460-61 (same).

Here, the right that Miller seeks to vindicate in this lawsuit is unquestionably the reproduction and derivative use of her Manuscript. Indeed, in her answering brief, plaintiff acknowledges that the essence of her conversion claim is that the Macmillan defendants deprived her of "the benefits of [ ] ownership of [the] manuscript." Opp. Br. at 7. Plaintiff does not (and cannot) deny that she retained copies of her Manuscript and, hence, does not (and cannot) allege

that she was denied access to the physical document. Instead, plaintiff alleges that the Macmillan defendants converted the *expression* contained in the Manuscript. See Opp. Br. at 3-4 (alleging that book in suit is "not an original work"). This is <u>exactly</u> the kind of conversion claim that the Second Circuit held in *Harper & Row* is preempted. *See Harper & Row* at 723 F.3d at 201 (affirming dismissal of conversion claim).

Because Miller's conversion claim rests upon allegations of unlawful use of the expression contained in the Manuscript, her conversion claim is preempted.

## II.

### THE FIRST AND SECOND CAUSES OF ACTION FAIL TO STATE CLAIMS FOR RELIEF

As the Macmillan defendants noted in their moving brief, in addition to being preempted under the Copyright Act, plaintiff's two state law claims against the Macmillan defendants must also be dismissed for the additional and independent reason that they fail to plead cognizable claims for the relief.

Miller does not attempt to defend her Complaint as pled. Instead, she admits that she has failed to plead actionable claims for tortious interference and conversion, but asserts that she is entitled to remedy the pleading deficiencies by way of amendment. *See* Opp. Br. at 6-7. Yet, contrary to standard rules of practice, plaintiff has not attached a proposed amended pleading, nor has she complied with this Court's individual rules, which required her to give notice of her intent to file an amended pleading within ten (10) days of receipt of defendants' dismissal motion. *See* Individual Practices of Harold Baer, Jr., ¶ 4(A)(i). And plaintiff's answering brief provides nothing more than vague assertions that she might be able to cure the Complaint's pleading defects. Amendment would be futile. First, as noted above, plaintiff's claims against the Macmillan defendants are preempted as a matter of law, and preemption cannot be overcome

by amendment. Second, even if her claims were not preempted (and they are), Miller cannot plead a valid cause of action for either tortious interference or conversion consistent with her obligations under Fed. R. Civ. P. 11.[3]

## A.   Tortious Interference

Miller virtually concedes that she had not pled a tortious interference claim against the Macmillan defendants, but asserts that "on a proper pleading" she can "prove facts constituting the tort of tortious interference with business relations." *See* Opp. Br. at 6. Miller understates her pleading obligation. To state an actionable tortious interference claim, Miller must plead that the Macmillan defendants acted with the sole purpose of harming her or used criminal or tortious means. *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 382 (2d Cir. 2000). And this plaintiff cannot do.[4]

Given that the Macmillan publishing defendants and author Valentine have a legitimate economic interest in publishing the Book, Miller cannot allege that their sole purpose in so doing was to harm plaintiff. So too, plaintiff does not, and cannot consistent with Rule 11, allege independent tortious conduct by the Macmillan defendants. Indeed, far from alleging tortious

---

[3]   In her Opposition, Miller incorrectly states that "a motion to dismiss should only be granted if the plaintiff can prove no set of facts which would entitle her to relief," citing *Jacobs v. Ramirez*, 400 F.3d 105, 106 (2d Cir. 2005). This standard "was recently 'retired' by the United States Supreme Court in *Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)." *Atrium*, 2008 WL 2743517 at * 2. For Miller's complaint to withstand a motion to dismiss, her "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. at 1964-65 (internal citations omitted).

[4]   Plaintiff's allegations as to the business relationship that was allegedly harmed is also something of a bouncing ball. In the Complaint, the business relationship she alleges was harmed was with unknown third parties in the literary community (Complaint ¶ 21); yet, her answering brief now suggests that, instead, the harmed business relationship was that existing between plaintiff and defendant Hunter. Opp. Br. p. 5. Even assuming that it is the Miller-Hunter relationship that is at issue, plaintiff does not – and cannot – plead that the Macmillan defendants interfered with that relationship – let along through tortious means.

activity, Plaintiff does not dispute the settled legal principle that the Macmillan defendants had every lawful right to publish the Book pursuant to the license granted by Miller's joint-author, Hunter. *See, e.g., Thomson v. Larson*, 147 F.3d 195, 199 (2d Cir. 1998) ("[E]ach joint author has the right to use or to license the work as he or she wishes ..."); *Jasper v. Sony Music Entertainment, Inc.*, 378 F. Supp.2d 334, 346 (S.D.N.Y. 2005) (licensees "have no obligation to co-authors with whom they do not contract"); Macmillan Def. Moving Br. at 12-13. In short, Miller does not and cannot plead any factual allegations of tortious conduct that would state a claim for tortious interference.

Miller cites *NBT Bancorp, Inc. v. Fleet/Norstar Financial Group, Inc.*, 159 A.D.2d 902, 904 (3d Dept. 1990), for the proposition that a tortious interference claim should not be dismissed where the plaintiff has pled facts from which it could be concluded that defendants used unlawful means to injure the plaintiff. In that case, however, plaintiffs asserted that defendants had engaged in unlawful manipulation of stock prices in violation of numerous securities laws and alleged factually specific conduct. Here, in stark contrast, Miller has not pled *any factual allegations* of unlawful conduct by the Macmillan defendants' – other than publishing the Manuscript, which is not unlawful. Given the absence of factual allegations in the original Complaint that could possibly raise a right of any recovery above mere speculation, and Miller's wholesale failure to include any such allegations in her answering brief or in a proposed amended complaint, amendment would be futile and the tortious interference claim should be dismissed with prejudice.

B. **Conversion**

As the Macmillan defendants noted in their moving brief, Miller does not allege that she was damaged by the Macmillan defendants' physical possession of a copy of the Manuscript; instead, she alleges she was damaged by the Macmillan defendants' publication of the expression

contained in the Manuscript. As a result, her conversion claim fails because she cannot show that the Macmillan defendants exercised dominion over the expression in the Manuscript to the complete exclusion of Miller. *See, Harper & Row*, 723 F.2d at 201 ("[c]onversion requires … the exercise of unauthorized dominion and control to the complete exclusion of [the plaintiff]").

In her opposition brief, Miller cites *Trustforte Corp. v. Eisen*, 10 Misc.3d 1064(A) (NY Nov. 15, 2005) for the proposition that "New York law recognizes that conversion can lie even if the property is in part intangible." Opp. Br. at 7. Plaintiff seriously misstates the holding in *Trusteforte*. There, the court distinguished between cases where defendants had taken intangible property and completely excluded the plaintiffs from access to it – like denying a plaintiff access to a customer list stored on a defendant's computer system, which does not exist elsewhere – and cases (like this one) where a defendant is alleged to have made physical copies of the information, but the plaintiff retains the information in question and is still able to use it. The Court found that, while the defendant in *Trusteforte* had copied information that belonged to plaintiffs, because neither he nor any other defendants had done anything to keep plaintiffs from accessing and using the information, the conversion claim failed to state a claim for relief. *Id.* at *3. And that is this case as well.

Here, Miller does not – and cannot – allege that the copy of the Manuscript that she sent to Hunter is her only copy. Indeed, consistent with Rule 11, Miller concedes that she retained a copy of the Manuscript. As a result, she cannot allege that she was denied access to the expression contained in the Manuscript, and therefore cannot plead conversion consistent with the facts of this case, no matter how much she amends.

## III.

## **PLAINTIFF HAS NOT SERVED DEFENDANT VALENTINE**

In the Preliminary Statement of her answering brief, Miller acknowledges that "Valentine also asserts that she has not been served" with the Complaint. Opp. Br. at 1. Miller makes no other comment about –and does not dispute – the lack of service on Valentine. Accordingly, the Complaint should be dismissed as to Valentine on this additional ground as well.

## **CONCLUSION**

For all the reasons stated above, the claims asserted against the Macmillan defendants in the Complaint should be dismissed with prejudice.

Dated: New York, New York
       July 23, 2008

                          Respectfully submitted,

                          DAVIS WRIGHT TREMAINE LLP

                          By: /s/ Robert D. Balin
                              Robert D. Balin (RDB 5847)
                              Deborah A. Adler (DA 0909)

                          1633 Broadway – 27th Floor
                          New York, N.Y. 10019
                          (212) 489-8230

                          *Attorneys for Defendants*
                          *Holtzbrinck Publishers, LLC,*
                          *Macmillan Publishers, Inc., St. Martin's Press, LLC*
                          *and Michelle Valentine*