**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
**DIANNE MILLER,**                            :
                                              :
                          **Plaintiff,**      :        **08 Civ. 3508 (HB)**
                                              :
       **-against-**                          :        **OPINION & ORDER**
                                              :
**HOLTZBRINCK PUBLISHERS, LLC,**              :
**MACMILLAN PUBLISHERS, INC., SAINT**         :
**MARTIN'S PRESS, HEATHER HUNTER**            :
**and MICHELLE VALENTINE,**                   :
                                              :
                          **Defendants.**     :
------------------------------------------------------------x

**Hon. HAROLD BAER, JR., United States District Judge:**

Plaintiff Diane Miller ("Plaintiff") filed an Amended Complaint alleging fraudulent inducement and misrepresentation against Defendant Heather Hunter ("Hunter"). Hunter now moves this Court to dismiss Plaintiff's Amended Complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. Hunter raises two arguments in support of her motion to dismiss: (1) that Plaintiff has not pled the claim of fraudulent inducement with sufficient particularity under the Federal Rules of Civil Procedure; and (2) that Plaintiff has failed to state a cause of action for fraudulent inducement and misrepresentation because she has attempted improperly to convert a claim for breach of contract into a claim of fraudulent inducement. For the reasons set forth below, Hunter's motion is granted and the Amended Complaint is dismissed.

## I. FACTUAL BACKGROUND

Plaintiff, an author, alleges that she agreed to write a book for Hunter, with an understanding that if a publisher showed interest, Miller would be paid an amount to be negotiated at that time. Amended Complaint ("Am. Compl.") ¶ 6. Hunter, a former adult-film star, was the first African-American woman to be chosen for the somewhat dubious honor of induction into the Adult Film Hall of Fame. She allegedly contacted Plaintiff to ghost-write Hunter's memoirs and to tell the story of her shimmying up the pole of success in the porn profession. After being contacted by Hunter's literary agent in approximately January 2004, Plaintiff reviewed Hunter's notes and allegedly agreed to write the book. *Id.* ¶ 7. Plaintiff

1

alleges that Hunter told Plaintiff that she would be paid at least $25,000 from Hunter's advance royalties once the manuscript had been accepted for publication, and also agreed to pay Plaintiff further royalties after the book was published.[1]  *Id.* ¶ 8.  The agreement between Plaintiff and Hunter regarding royalties for the manuscript was apparently not reduced to writing.  Plaintiff alleges that in April 2005 she delivered a completed manuscript, with the enticing title "Insatiable Desires," to Hunter and her agent.  *Id.* ¶ 10.  Although Plaintiff alleges that she continued to communicate with Hunter and her agent throughout 2004 and to approximately October 2005 regarding possible publishers for Plaintiff's manuscript, she asserts that on or about July 24, 2007, a book that was substantially similar to the manuscript Plaintiff delivered to Hunter, entitled "Insatiable: The Rise of a Porn Star" and written by Michelle Valentine, was published.  *See id.* ¶¶ 11-12.

Plaintiff filed her initial complaint in this matter in October 2007.  The initial complaint brought a claim for tortious interference with business relations against several defendants, including Hunter, Valentine and various publishing companies, as well as a claim for conversion against the publisher Defendants and Valentine, and a claim for fraudulent inducement and misrepresentation against Hunter.  On November 12, 2008, this Court granted the Defendants' motion to dismiss, finding that Plaintiff's conversion and tortious interference claims were preempted by the Copyright Act of 1976 and that Plaintiff's fraudulent inducement claim against Hunter lacked the requisite specificity for fraud claims under Rule 9(b).  *See Miller v. Holtzbrinck Publishers, LLC*, 08 Civ. 3508 (HB), 2008 U.S. Dist. LEXIS 92038, at *4-12 (S.D.N.Y. Nov. 12, 2008).  However, this Court granted Plaintiff leave to amend her complaint with respect to her fraudulent inducement cause of action.  *Id.* at *12-13.  Plaintiff filed her Amended Complaint on December 2, 2008, and this motion to dismiss followed.

## III.  DISCUSSION

### A.     Legal Standard on a Motion to Dismiss

To survive a motion to dismiss, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (retiring previous pleading standard, under *Conley v. Gibson*, 355 U.S. 41 (1957), that required denial of a Rule 12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no

---

[1] Of course, to the extent Hunter made such a promise, it is doubtful that it would be enforceable in contract or considered a material misstatement of fact in the fraud analysis, as there was no guarantee that an advance would be forthcoming once a publisher was found.

set of facts in support of his claim which would entitle him to relief").  A court must accept the facts alleged in the complaint as true, even if doubtful, and draw all reasonable inferences in favor of the nonmoving party.  *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989).  However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss."  *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 227 (2d Cir. 2006).  In deciding a motion to dismiss, the Court must apply a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."  *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).  This standard requires "factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

Additionally, in considering the sufficiency of the allegations of a claim for fraud, the Court must examine the allegations in the complaint with an eye toward the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure.  Rule 9(b) provides: "In alleging fraud or mistake, the party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Although Rule 9(b) must be read in conjunction with Rule 8(a), which requires only a "short and plain statement" of the claim asserted, the fraud allegations must nonetheless be sufficiently specific to "give the defendant adequate information to allow the defendant to frame a response" and "to allow the defendant a reasonable opportunity to answer the complaint."  *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 257 (S.D.N.Y. 2008) (citing *Ross v. H.H. Robins Co.*, 607 F.2d 545, 557-58 (2d Cir. 1979), *cert. denied*, 446 U.S. 946 (1980)) (internal quotation marks omitted).  Thus, the Second Circuit has recognized that "[t]he specificity required by Rule 9(b) is distinct from Rule 8(a)'s liberal 'plain statement' rule."  *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1993).  This distinction serves several important policies, including (1) to afford defendants fair notice of claims against them and the factual ground upon which such claims are based; (2) to safeguard defendants' reputations and goodwill from improvident charges of wrongdoing; and (3) to prevent the filing of strike suits.  *See id.* (citing *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990)).  The Second Circuit "recognize[s] and rigorously enforce[s] these salutary purposes of Rule 9(b)."  *Ross*, 904 F.2d at 823.

3

**B.     Miller's Fraudulent Inducement Claim Fails To State a Cause of Action**

       1.   *Miller's Fraudulent Inducement Claim Fails to Plead with Sufficient Particularity*

The basis of Plaintiff's fraudulent inducement claim is that Hunter induced Plaintiff to author Hunter's memoirs without the intention to pay Plaintiff for her work.  *See* Am. Compl. ¶ 8, 14.  Hunter argues that the Amended Complaint does little, if anything, to remedy the deficiencies that this Court noted in Plaintiff's initial complaint.  Namely, Hunter argues that the Amended Complaint should be dismissed because Plaintiff has failed to plead fraud with particularity as required by Federal Rule 9(b).  *See* Memorandum of Law in Support of Motion to Dismiss ("Hunter's Mem.") at 3-4.

To withstand a motion to dismiss, as for all claims sounding in fraud, a claim for fraudulent inducement must comply with the requirements of Rule 9(b), which requires that allegations of fraud be pled with particularity.  Fed. R. Civ. P. 9(b).  The Second Circuit has held that "[t]o satisfy the particularity requirement of 9(b), a complainant must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements."  *Cosmas*, 886 F.2d at 11; *see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (finding that 9(b) requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent").

In addition to stating the "where, when, who or how" of the allegedly fraudulent statements, a plaintiff alleging fraudulent inducement must also show that the defendant exhibited scienter, or fraudulent intent.  Although scienter need not be pled with great specificity, *see* Fed. R. Civ. P. 9(b), "there must be some factual basis for conclusory allegations of intent." *Ouknine v. MacFarlane*, 897 F.2d 75, 80 (2d Cir. 1990).  Thus, "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995); *see also Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano*, 331 F. Supp. 2d 247, 253 (S.D.N.Y. 2004).  The requisite "strong inference" of fraud may be shown by alleging either (1) facts to show that the defendant had both motive and opportunity to commit fraud, or (2) facts constituting strong circumstantial evidence of conscious misbehavior or recklessness.  *Shields v. Citytrust Bancorp. Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

The extent of Plaintiff's factual allegations supporting her fraudulent inducement cause of action is as follows:  that Plaintiff agreed to write Hunter's memoirs, Am. Compl. ¶¶ 6-7; that

Hunter told Plaintiff that she, Hunter, would pay Plaintiff the sum of at least $25,000 from advance royalties once the book had been accepted for publication as well as further percentages of royalties received after publication, *id.* ¶ 8; that Hunter "had no intention of crediting or paying [Plaintiff] for her work" and "made these statements to induce [Plaintiff] to write a manuscript for her use and publication," *id.*; that throughout 2004 and early 2005, Hunter continued to assure Plaintiff that she would be paid for her work, *id.* ¶ 9; that these conversations and assurances occurred primarily by telephone an*d* email, but also during two in-person meetings in Atlanta, Georgia, *id.*; that pursuant to and in reliance on these allegedly fraudulent misrepresentation, Plaintiff delivered a finished manuscript to Hunter in April 2005, *id.* ¶ 10; that when Hunter's book "Insatiable" ultimately was published, she failed to pay Plaintiff as provided in their agreement, or to give Plaintiff proper credit for her work, *id.* ¶ 11.

It appears that Plaintiff improperly has conflated the pleading standards of Rules 8(a) and 9(b), respectively.  Specifically, Plaintiff argues that "[w]hile Rule 9(b) requires further particularity in pleading fraud than for other causes of action, the fact remains that notice pleading is sufficient in federal court."  Memorandum in Opposition to Defendant's Motion to Dismiss ("Opp. Mem.") at 4.  However, as noted above, while Rules 8(a) and 9(b) must be read in conjunction with one another, the Rules are distinct, and the heightened pleading standard of Rule 9(b) applies with force to all claims sounding in fraud.  *See IUE AFL-CIO Pension* Fund, 9 F.3d at 1057; *Ross*, 904 F.2d at 823.  It is pursuant to this standard that the Court considers Plaintiff's allegations of fraudulent inducement.

Reading the allegations of the Amended Complaint liberally, it may well be that the circumstances of the fraud were sufficiently pled.  For example, Plaintiff has alleged the "who" (Hunter), "when" (2004 and early 2005), "where and how" (telephone, email and in-person), and why (Hunter did not intend to fulfill her promise).  However, this Court need not determine whether these allegations satisfy the Rule 9(b) requirements, because it is clear that Plaintiff has failed adequately to plead the element of scienter in her fraudulent inducement claim.  The allegations relating to Hunter's intent in her communications with Plaintiff are merely conclusory allegations of intent – *i.e.*, Plaintiff alleges merely that "Hunter had no intention of crediting or paying Miller for her work," *id.* ¶ 8.  While Rule 9(b) does not impose the heightened pleading standard on allegations of scienter, the law of this Circuit requires a showing of a strong inference of fraudulent intent.  Here, Plaintiff alleges no facts to support her conclusory allegations of intent or facts that would give rise to the requisite strong inference that

defendant had either motive and opportunity or knowledge or reckless disregard sufficient to establish the element of scienter for her fraudulent inducement claim.  *See Shields*, 25 F.3d at 1128.

In short, Plaintiff has failed to satisfy the pleading requirements of Federal Rule 9(b) and has failed to state a cause of action for fraudulent inducement.  For this reason alone, the Amended Complaint would be dismissed with prejudice.

>    2.  *Miller's Fraudulent Inducement Claim Sounds in Breach of Contract*

Further, the gravamen of Plaintiff's fraud claim is that Hunter agreed to pay her for writing Hunter's memoirs, but did not fulfill her side of the agreement.  Thus, in addition to failing under the Rule 9(b) pleading requirements, Plaintiff's cause of action for fraudulent inducement sounds in breach of contract and constitutes an improper effort to circumvent the Statute of Frauds.  It is well settled under New York law[2] that "a contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations."  *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 616 (S.D.N.Y. 2003) (quoting *International Cabletel Inc. v. Le Groupe Videotron Ltee.*, 978 F. Supp. 483, 486-87 (S.D.N.Y. 1997)) (internal quotation marks and alterations omitted); *see also Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) ("[A]s a general matter, a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract.  Thus, general allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support a fraud claim.  One reason for this rule is to prevent parties from avoiding the Statute of Frauds by recharacterizing their contract claims as torts.") (citing *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 318, (1995) and *Lehman v. Dow Jones & Co.*, 783 F.2d 285, 294 (2d Cir. 1986) (Friendly, J.)) (internal quotations and alterations omitted); *Grappo v. Alitalia Linee Aeree Italiane, S.p.A.*, 56 F.3d 427, 434 (2d Cir. 1995) ("A cause of action for fraud does not generally lie where the plaintiff alleges only that the defendant entered into a contract with no intention of performing."); *Creditsights, Inc. v. Ciasullo*, 05 CV 9345 (DAB), 2008 U.S. Dist. LEXIS 91481, at *25-26 (S.D.N.Y. Sept. 5, 2008) (dismissing counterclaim for fraudulent inducement based solely on failure to disclose that counterclaim

---

[2] There does not seem to be a dispute between the parties as to the applicable law in this case—both parties rely exclusively on New York substantive law, and "the parties' mutual decision to brief only New York law ends the [choice of law] inquiry."  *Kwan v. Schlein*, 441 F. Supp. 2d 491, 501 (S.D.N.Y. 2006) (citing *3Com Corp. v. Banco do Brasil, S.A.*, 171 F.3d 739, 743 (2d Cir. 1999) ("The parties rely exclusively on New York substantive law, and where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.")).

defendants never intended to honor their obligations under certain agreements); *Kaliner v. Mt. Vernon Monetary Mgmt. Corp.*, 07 Civ. 4643 (LMM), 2008 U.S. Dist. LEXIS 67456, at *11 (S.D.N.Y. Sept. 3, 2008) ("The well accepted rule is that a cause of action for fraud does not arise when alleged fraud relates to a breach of contract."); *The Space, Inc. v. Simowitz*, 08 Civ. 2854 (SAS), 2008 U.S. Dist. LEXIS 51782, at *11 (S.D.N.Y. July 8, 2008) ("A contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations.") (quoting *Sichel v. Unum Provident Corp.*, 230 F. Supp. 2d 325, 328 (S.D.N.Y. 2002)); *Bezuszka v. L.A. Models, Inc.*, 04 Civ. 7703 (NRB), 2006 U.S. Dist. LEXIS 13620, at *41-42 (S.D.N.Y. Mar. 27, 2006) ("[A] fraud claim must be sufficiently distinct from the breach of contract claim, and a contract claim cannot be converted into a fraud claim by the addition of an allegation that the promisor intended not to perform when he made the promise.") (quoting *Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1160, 1162 (S.D.N.Y. 1996) (dismissing fraud claim where "the complaint does not allege a fraud claim that is sufficiently distinct from the breach of contract claim" but "merely appends allegations about [defendant's] state of mind to the claim for breach of contract")); *Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*, 383 F. Supp. 2d 428, (S.D.N.Y. 2003) (citing, *inter alia*, *Briefstein v. P.J. Rotondo Constr. Co.*, 8 A.D.2d 349, 351 (1st Dep't 1959) ("To say that a contracting party intends when he enters into an agreement not to be bound by it is not to state 'fraud' in an actionable area, but to state a willingness to risk paying damages for breach of contract.")).

The Second Circuit has enunciated three exceptions to the general rule against allowing fraud claims that are related to breaches of contract:  "to maintain a claim of fraud in such a situation, a plaintiff must either (i) demonstrate a legal duty separate from the duty to perform under the contract . . . ; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract . . . ; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages."  *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996); *Williams v. L.A. Models, Inc.*, 07 Civ. 6778 (NRB), 2008 U.S. Dist. LEXIS 60968, at *23-24 (S.D.N.Y. Aug. 5, 2008); *see also Hotel Constructors, Inc. v. Seagrave Corp.*, 574 F. Supp. 384, 387-88 (S.D.N.Y. 1983) (finding that plaintiff had made more than purely conclusory allegations that defendants never intended to perform; plaintiffs had also alleged facts that defendants made promises that they knew at the time to be *impossible* of performance due to other concurrent contractual obligations).

In this case, Plaintiff has alleged that Plaintiff agreed to write a book for Hunter, Am. Compl. ¶ 6, and in exchange Hunter agreed to pay her $25,000 in advance royalties for writing Hunter's memoirs and also to pay Plaintiff continuing royalties in the future based on book sales, *id.* ¶ 8, but that she failed to fulfill her side of the agreement after Plaintiff produced a manuscript, *id.* ¶ 11.  To attempt to convert this seemingly clear allegation of breach of contract (which, as noted above, is unlikely to be enforceable in any event) into one for fraudulent inducement, Plaintiff also generally alleges that "Hunter had no intention of crediting or paying [Plaintiff] for her work."  *Id.* ¶ 8.  Plaintiff has alleged no "collateral or extraneous" promises that Hunter made in addition to her promise to pay Plaintiff for her services.  Furthermore, Plaintiff has failed to allege any facts indicative of a legal duty distinct from the duty to perform the contract, or any special damage that would not be recoverable as contract damages.  *See Bridgestone/Firestone*, 98 F.2d at 20.  Thus, Hunter's alleged representations that Plaintiff would be paid royalties for writing Hunter's memoirs merely "constitutes a 'promissory statement as to what would be done in the future' and therefore cannot serve as the basis of a fraud claim, as a fraud claim premised on a promise of future performance of a contractual obligation would be duplicative of [a] breach of contract claim."  *Kaliner*, 2008 U.S. Dist. LEXIS 67456, at *14-15 (quoting *Deerfield Comm'ns Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 952, 956 (1986)).[3]  Consequently, plaintiff has failed to state a claim for fraudulent inducement, and her Amended Complaint must be dismissed.[4]

---

[3] As the Amended Complaint alleges but one cause of action, for fraudulent inducement and misrepresentation, this Court need not address Hunter's extraneous arguments that any contract that may have been in effect between Hunter and Plaintiff is unenforceable under the Statute of Frauds.  It is worth noting, however, that there is reason to seriously doubt the success of any potential contract claim, as Plaintiff has not alleged that any alleged agreement between her and Hunter was reduced to writing.  As the alleged agreement involved the payment of continuing royalties after publication, *see* Am. Compl. ¶ 8, it appears that such agreement would be required under New York's Statute of Frauds to be in writing as a contract incapable of performance within one year.  *See* N.Y. Gen. Oblig. Law § 5-701(1) ("every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged . . . if such agreement, promise or undertaking by its terms is not to be performed within one year from the making thereof"); *see also Kwan*, 441 F. Supp. 2d at 502 (finding that contract requiring continuous credit and payment of royalties to co-author of website was void because it was incapable of performance in one year and was not in writing).  Indeed, Plaintiff seems to acknowledge the difficulty of maintaining a breach of contract claim in this action.  *See* Opp. Mem. at 4 ("Had Ms. Miller alleged a claim for breach of an oral contract, defendant's argument that recovery is barred by the Statute of Frauds might have some force.").

[4] Hunter also argues that Plaintiff has alleged fraudulent inducement instead of a breach of contract claim as a vehicle for improperly demanding punitive damages, which are unavailable on a contract claim, and for this reason alone the claim must be dismissed.  *See* Hunter's Mem. at 9.  Because I find that the fraudulent inducement claim fails to state a cause of action, I need not address Hunter's alternative argument.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint is dismissed with prejudice.

The Clerk of this Court is directed to close this case and remove it from my docket.

**IT IS SO ORDERED.**

**New York, New York**
**March ___, 2009**

U.S.D.J.

9